UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICIA CORBETT-WARD,

                                              **Plaintiff,**

                                v.                                        1:12-CV-1755
                                                                      (FJS/DJS)

STATE OF NEW YORK OFFICE
OF ALCOHOLISM & SUBSTANCE
ABUSE SERVICES,

                                              **Defendant.**
_____

**APPEARANCES**                                            **OF COUNSEL**

**CHARNY & ASSOCIATES**                 **NATHANIEL K. CHARNY, ESQ.**
9 West Market Street
Suite B
Rhinebeck, New York 12572
Attorneys for Plaintiff

**OFFICE OF RUSSEL G. WHEELER**       **RUSSEL G. WHEELER, ESQ.**
9 West Market Street
Rhinebeck, New York 12572
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**             **CATHY Y. SHEEHAN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Patricia Corbett-Ward brings this action against Defendant State of New York Office of Alcoholism & Substance Abuse Services ("OASAS"). Currently pending before the Court is Defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 38. Pursuant to this Court's Order dated July 24, 2013, Plaintiff voluntarily dismissed with prejudice certain of her claims, and the parties further stipulated to certain statutes of limitations.[1] *See* Dkt. No. 26. As a result, Plaintiff's sole remaining claim arises under the Equal Pay Act. *See* 29 U.S.C. § 206(d)(1).

**II. BACKGROUND**

Plaintiff is Defendant's employee. She was hired in August of 2006 as a provisional Staff Development Specialist 1 ("SDS 1").[2] *See* Dkt. No. 43-5, Plaintiff's Response to Defendant's Statement of Material Facts, at ¶¶ 1-2 ("Plaintiff's Response"). Plaintiff took the SDS 1 civil service exam in 2007 and subsequently attained permanent status as an SDS 1 in 2008. *See id.* at ¶ 4. She is still employed as an SDS 1, with pay grade 18. *See* Dkt. No. 38-6, Corbett-Ward Dep., at 8:2-15. The thrust of Plaintiff's claim is that, from the time of her hiring to the present, she has performed work substantially equal to her male counterparts, who have the title of SDS 2 and are compensated at pay grade 23.

---

[1] In particular, the parties have stipulated that any claims arising out of a willful violation of the Equal Pay Act that accrued before November 28, 2009, and any claims not arising out of a willful violation of the Equal Pay Act that accrued before November 28, 2010, are untimely. *See* Dkt. No. 26.

[2] Although the job titles at issue in this case are Staff Development Specialist 1 and 2, the parties refer to them as either "SDS" 1 and 2 or "SPS" 1 and 2. The Court adopts the "SDS" shorthand for purposes of this Memorandum-Decision and Order.

Kathryn Patenaude, director of human resources and former director of personnel at OASAS, testified to differences in the job descriptions and responsibilities between the SDS 1 and SDS 2 positions. *See* Dkt. No. 38-5, Patenaude Dep., at 8:16-9:2, 10:15-21. In particular, Ms. Patenaude testified that the responsibilities of an SDS 1 include assisting with the development of training, writing curriculum, assisting with training sessions, and providing technical assistance. *See id.* at 15:7-23. She also testified that SDS 1s can "co-train," meaning that they assist a lead trainer with a training presentation. *See id.* at 16:8-22. Ms. Patenaude testified that the job duties of an SDS 2 include conducting training, supervising, working with others to determine training needs, determining which trainings qualify for accreditation, and preparing curriculum. *See id.* at 27:21-29:15. According to Ms. Patenaude, these titles were developed "[t]o better align with the duties that were being performed" and also to be more generically named. *See id.* at 13:19-14:3.

Plaintiff testified that she was paid less than her male colleagues with title SDS 2 while performing substantially the same work under similar conditions. Specifically, she testified that she often was the lead trainer and that her male colleagues "pushed off" their research work for her to do in connection with curriculum writing. *See* Dkt. No. 38-6, Corbett-Ward Dep., at 12:18-13:9; 15:13-16:20, 26:15-25. Plaintiff further testified that, from the beginning of her time with OASAS until the present day, she has undertaken such duties and split preparation and training equally with her male colleagues with title SDS 2. *See id.* at 12:18-22. Plaintiff also testified that she was and continues to be the only SDS 1 in the state of New York. *See id.* at 13:10-18. She further testified that, during this time, she was tasked with the majority of the research for curriculum writing and a "huge incorporation of adult learning theory into our trainings," none of which the SDS 2s did. *See id.* at 22:15-23:5.

In response to this extra work, Plaintiff initiated a grievance that was sustained, resulting in her receiving back-pay for the out-of-title work that she had completed. *See* Dkt. No. 38-5, Patenaude Dep., at 57:17, 58. Ms. Patenaude testified that Plaintiff stopped performing any out-of-title work as of June 22, 2012. *See id.* at 64:6-14. In contrast, as noted, Plaintiff testified that after the grievance her job duties changed "in word" only but that she continued to perform the duties of an SDS 2. *See* Dkt. No. 38-6. Corbett-Ward, Dep., at 12:18-13:9.

It is undisputed that Plaintiff did not qualify for the SDS 2 title until the fall of 2012 when, for the first time, she was among the top three scorers on the applicable civil service exam and accordingly was "reachable" to be hired. *See* Dkt. No. 38-6, Corbett-Ward Dep., at 10:3-8. Although not expressly clear from the record, it appears that Plaintiff was not hired for an SDS 2 position at that time because she became reachable only when another individual was hired. It appears that there have been no openings since that time.

It is also undisputed that, in 2008, OASAS hired two women for the position of SDS 2 who were paid more than Plaintiff. *See* Dkt. No. 43-5, Pl.'s Resp., at ¶¶ 7-8; *see* Dkt. No. 38-6, Corbett-Ward Dep., at 46:11-23.

## III. DISCUSSION

The Equal Pay Act prohibits employers from discriminating on the basis of sex by paying members of the opposite sex more for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]" 29 U.S.C. § 206(d)(1). In this context, the Second Circuit employs a burden-shifting analysis similar to that used for other employment discrimination claims. *See, e.g.*, *Flaherty v. Massapequa Pub. Schs.*, 752 F. Supp. 2d 286, 299 (E.D.N.Y. 2010).

### *1. Prima facie claim*

To state a prima facie claim under the Equal Pay Act, a plaintiff must demonstrate that (1) the employer pays different wages to employees of different genders; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 255 (2d Cir. 2014) (quotation omitted). A prima facie claim under the Equal Pay Act does not require a showing of discriminatory intent. *See Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (citations omitted). Furthermore, "[t]o survive a motion for summary judgment at the prima facie stage, a plaintiff need only make a *de minimis* showing." *Crespo v. Harvard Cleaning Servs.*, No. 13-CV-6934, 2014 WL 5801606, *5 (S.D.N.Y. Nov. 7, 2014) (citing [*Tomka*] *v. Seiler*[ *Corp.*], 66 F.3d 1295, 1308 (2d Cir. 1995)); *accord Betlewicz v. Div. of N.Y.S. Police*, No. 1:12-CV-1158, 2013 WL 2181248, *5 (N.D.N.Y. May 20, 2013) (finding that a male state trooper sufficiently pled a prima facie Equal Pay Act claim by alleging that "he was denied salary and benefits which were provided to *at least one* female trooper 'performing the same patrol and related duties'" (emphasis added)).

In this case, Defendant does not contest that Plaintiff has made out a prima facie claim. Indeed, Plaintiff testified that she was paid less than her male colleagues while performing the same or more work under similar conditions. Specifically, she testified to the following facts: that she often was the lead trainer when presenting training with a male SDS 2 colleague; that, from the beginning of her time with OASAS until the present day, she has undertaken such duties and split preparation and training equally with her male colleagues with title SDS 2; that she was and continues to be the only SDS 1 in the state of New York; that, during this time, she was tasked with the majority of the research for curriculum writing and a "huge incorporation of

adult learning theory into our trainings"; and that, during this time, she was compensated at pay grade 18 and all of her male SDS 2 colleagues were compensated at grade 23.  The Court finds that this evidence is sufficient to meet Plaintiff's *de minimis* burden to state a prima facie claim at this stage in the proceedings.

### *2. Affirmative defense*

Once a plaintiff has made out a prima facie case of sex discrimination under the Equal Pay Act, the burden of persuasion shifts to the defendant to show that the wage disparity falls into one of the statutory affirmative defenses: "'(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor than sex.'"  *Ryduchowski*, 203 F.3d at 142 (quoting 29 U.S.C. § 206(d)(1)). In this circuit, "an employer bears the burden of proving that a bona fide business-related reason exists for using the gender-neutral factor that results in a wage differential in order to establish the factor-other-than-sex defense."  *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 526 (2d Cir. 1992).  In other words, "the job classification system resulting in differential pay [must be] rooted in legitimate business-related differences in work responsibilities *and* qualifications . . . ." *Id.* at 525 (emphasis added) (citations omitted).

In this case, Defendant emphasizes that Plaintiff did not qualify for SDS 2 until the fall of 2012 and further that the SDS 1 and SDS 2 titles "were developed to better align the duties that were currently being performed and to gear the titles towards more generic titles as requested by the New York State Department of Civil Service."  *See* Dkt. No. 38-7, Def.'s Mem., at 5-6.  In particular, Kathryn Patenaude testified that the responsibilities of an SDS 1 include assisting with the development of training, writing curriculum, assisting with training sessions, and providing

technical assistance. In contrast, Ms. Patenaude described the job duties of an SDS 2 as conducting training, supervising, working with others to determine training needs, determining which training qualifies for accreditation, and preparing curriculum. The differences in job description between the two positions, viewed together with the fact that Plaintiff was not reachable for SDS 2 until the fall of 2012, suggest that Defendant had a legitimate business reason for compensating Plaintiff differently.

### 3. *Pretext*

"[T]he plaintiff may counter the defendant's affirmative defense by offering evidence showing that the reasons sought to be proved are a pretext for sex discrimination." *Aldrich*, 963 F.2d at 526 (citation omitted). "'The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has "use[d] the factor reasonably in light of the employer's stated purpose as well as its other practices."'" *Id.* (quotation omitted). In this case, Defendant does not dispute that Plaintiff actually performed the work of an SDS 2 for much of the time at issue in this case. However, it further is undisputed that, from 2008 to present, two of the last three SDS 2s hired were female. This fact, viewed in light of the fact that Plaintiff was not reachable for the SDS 2 position until the fall of 2012, eliminates any reasonable conclusion that Plaintiff's status as the only SDS 1 in New York State is somehow the result of sex discrimination.[3] *Cf. Sherman v. Nat'l Grid*, 993 F. Supp. 2d 219, 228-29 (N.D.N.Y. 2014) (granting summary judgment where all employees with the same title were paid the same regardless of gender). Thus, because Plaintiff has not shown that Defendant's affirmative

---

[3] Accordingly, to the extent that Plaintiff continues to perform work above her pay grade, as she testified, an Equal Pay Act claim is not the appropriate vehicle for addressing this issue.

defense is a pretext, the Court finds that she has not identified a genuine issue of material fact that necessitates a trial.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No 38, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 14, 2016
       Syracuse, New York

                                            Frederick J. Scullin, Jr.
                                            Senior United States District Judge